```
               UNITED STATES DISTRICT COURT
                         FOR THE
                WESTERN DISTRICT OF NEW YORK
```

CARL PALADINO,                         :
                                       :
    Plaintiff,                         :
                                       :
        v.                             :    File No. 17-cv-538
                                       :
DR. BARBARA SEALS-NEVERGOLD,           :
SHARON BELTON-COTTMAN, HOPE            :
JAY, DR. TERESA HARRIS-TIGG,           :
JENNIFER MACOZZI, PAULETTE             :
WOODS, CITY OF BUFFALO PUBLIC          :
SCHOOL DISTRICT, and the               :
BOARD OF EDUCATION FOR THE             :
CITY OF BUFFALO PUBLIC SCHOOL          :
DISTRICT,                              :
                                       :
    Defendants.                        :

## OPINION AND ORDER

Plaintiff Carl Paladino brings this action claiming violations of his First Amendment rights.  Pending before the Court is a motion to dismiss the Second Amended Complaint, filed by Defendants Board of Education for the City of Buffalo Public Schools ("Board of Education" or "Board"), the City of Buffalo Public School District, and six elected Board members ("individual Defendants").  For the reasons set forth below, the motion to dismiss is granted.

## Factual and Procedural Background

The Second Amended Complaint asserts that Carl Paladino has been active in Western New York business and politics for decades.  In 2010, he was the Republican candidate for the office of Governor of New York.

In December 2106, a Buffalo magazine, Artvoice, posed four questions to various local leaders including Paladino, who at the time was a member of the Board of Education.  Paladino drafted an initial set of responses that he intended to send via email exclusively to a group of his friends.  Those draft responses disparaged public figures, including former President Barack Obama and his wife.  Paladino mistakenly included Artvoice on the email distribution list, and on December 23, 2016 his draft responses were published.  Paladino asserts that he wrote his responses in his capacity as a private individual, and not as an elected member of the Board.

Paladino's pleadings allege that after the publication by Artvoice, certain Board members made efforts to have him removed from his elected seat.  The Second Amended Complaint refers to those six Board members as the "Majority Faction," with Paladino and two others making up the "Minority Faction."  At a meeting on December 29, 2016, the Majority Faction publicly censured Paladino and voted in favor of a resolution demanding his resignation.  The resolution stated that if Paladino failed to resign, the Board would file a petition for his removal.

Paladino did not resign.  On January 4, 2017, the Majority Faction, joined by one member of the Minority Faction, held a special meeting and chose to retain counsel to help them bring a petition for removal against Paladino under New York Education

Law Section 306.  Paladino alleges that the special meeting violated the New York State Open Meetings Law.  He also claims, upon information and belief, that counsel ultimately advised the Majority Faction that any attempt to remove him for his controversial communications in December 2016 would violate the First Amendment and subject the Board and its individual members to civil liability.  Consequently, the Majority Faction allegedly coordinated with individual petitioners and the NAACP to ensure that non-government parties filed Section 306 petitions.

On January 5, 2017, Paladino published an article in Artvoice relating to the Board's collective bargaining negotiations with the teachers' union.  Certain Board members believed that the article revealed confidential information discussed during the Board's executive session, and that its publication constituted grounds for Paladino's removal.  When the idea of removing Paladino was challenged by Minority Faction member Patricia Pierce, one Board member allegedly replied: "we can't get him for [his December 23, 2016] speech, but we can get him for this."

On January 18, 2017, teachers' union New York State United Teachers filed a petition for Paladino's removal from the Board.  The petition asserted a violation of the Board's executive session privilege and also included a claim for removal based upon Paladino's December 23, 2016 speech.  On January 23, 2017,

3

the Buffalo Parent Teacher Organization ("BPTO") filed a petition comprised of those same allegations.  Paladino claims that both petitions were filed as part of a coordinated effort with the Defendants, as evidenced by the billing records of the Board's retained counsel.

On August 17, 2017, the Commissioner removed Paladino from his elected position on the Board, finding that he had improperly disclosed confidential information from an executive session. The Commissioner's decision was subsequently upheld by the New York State Supreme Court, Appellate Division, Third Department. That court returned Paladino's requests for declaratory judgment to the Albany County Supreme Court, which denied those claims and entered final judgment.

The Second Amended Complaint asserts the following causes of action: (1) retaliation for private speech by voting for a public censure; (2) retaliation for private speech by passing resolutions on December 29, 2016 (demanding Paladino's resignation) and January 4, 2017 (to retain counsel); (3) retaliation for public political speech by authorizing and bringing a petition for removal; (4) deprivation of civil rights by filing a removal petition on the basis of Paladino's comments about a public contract, which was a pretext for retaliation on the basis of his private comments; (5) conspiracy to deprive Paladino of his civil rights by hiring counsel who, in turn,

4

conspired with private actors; (6) retaliatory investigation into private political speech; (7) retaliatory investigation into public political speech; (8) retaliatory inducement of prosecution; (9) declaratory judgment that Defendants engaged in retaliation in violation of Paladino's First Amendment rights; and (10) declaratory judgment that details concerning the negotiation of a public contract are not confidential.

Defendants now jointly move to dismiss the Second Amended Complaint, arguing failure to state a claim and lack of subject matter jurisdiction.  The motion is opposed.

## **Discussion**

### I.   **Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true.  *See Iqbal*, 556 U.S. at 678.

That said, pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). When considering subject matter jurisdiction, the Court may refer to matters outside the pleadings. *Id.*

## II. Actionable Conduct

Defendants first argue that Paladino cannot bring a First Amendment retaliation claim against Board members who advocated for, but did not have the power to execute, his removal. Removal power rested with the Commissioner of Education. Paladino submits that by threatening to file a petition if he did not resign, and then voting to authorize the filing of a petition, Defendants' conduct was actionable.

Defendants rely on *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005), in which an elected member of the New York City community school board claimed that she was removed from office based on

6

allegations that were fabricated by fellow board members. Plaintiff Velez brought her claims against those board members, three investigators, and the school district Chancellor alleging, among other things, that her removal was in retaliation for her political views and thus violated her rights under the First Amendment. Defendants moved to dismiss under Rule 12(b)(6).

On appeal, the Second Circuit first held that "the First Amendment bars state officials from stripping elected representatives of their office based on the political views of such representatives." *Velez*, 401 F.3d 75 at 98. The court further held, however, that only the school district Chancellor was subject to First Amendment liability. While the investigators were not alleged to have been politically motivated, the board members had "no legal authority over the Chancellor's removal decision" and had "acted in a legislative capacity." *Id.* at 99. "Accordingly, though the actions of the board member defendants undoubtedly set into motion Velez's ouster, those actions cannot . . . support a First Amendment retaliation claim." *Id.*

Here, the defendant Board members submitted a petition for Paladino's removal based upon his statements regarding collective bargaining negotiations. Board members also allegedly coordinated with non-governmental entities and encouraged them to file their own petitions. While Paladino brings claims regarding

7

efforts to convince him to resign, those efforts were unsuccessful. The Court also notes that, upon advice of counsel, the Board decided not to take formal action with respect to the comments published in Artvoice in December 2016. And though Paladino brings causes of action relating to the Board authorizing an investigation, his actions were open, publicly documented, and are not in dispute.

The only formal Board actions of consequence were the retention of counsel and the consequent resolution to file a petition with the Commissioner. That petition, as well as any alleged communications through counsel with other interested parties, "set into motion" Paladino's ouster. *Id.* The petition did not actually remove Paladino from his position, as that power lay solely with the Commissioner. Accordingly, under *Velez*, the Board members' conduct did not give rise to a plausible First Amendment claim. *Id.*

Paladino cites *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003), which involved a public official, Molinari, complaining to a billboard company about a religious organization's signs proclaiming homosexuality to be a sin. The billboard company removed the signs, and the religious organization filed suit against Molinari. Although Molinari did not have regulatory or other direct decision-making authority over the billboard company, the Second Circuit concluded that the company "could

reasonably have believed that Molinari intended to use his official power to retaliate against it if it did not respond positively to his entreaties." *Okwedy*, 333 F.3d at 344. "A public official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form." *Id.*

*Okwedy* is distinguishable. Molinari was a public official who held power, albeit indirect power, over private citizens. It was on that basis that the Second Circuit found his communication arguably coercive. Here, the Board members were at first communicating with a peer over whom they had no such power. Their subsequent communications, which Paladino also considers actionable, were with counsel and the Commissioner of Education. While Paladino tries to paint the Board as highly influential given its role in the petition process, the fact remains that it was powerless to remove him without a ruling by a separate party. Accordingly, *Okwedy* is not controlling.

Paladino also claims support from *Zehner v. Jordan-Ellbridge Board of Education*, 5:11-CV-1202, 2019 WL 4083040 (N.D.N.Y. Aug. 29, 2019), in which defendants moved for dismissal of plaintiff's retaliation claims due to (1) lack of personal involvement and

(2) qualified immunity. The question of whether the defendants' conduct was actionable under the First Amendment was not raised. The case also involved tangible actions by a school board against an employee, including his removal from public meetings and suspension. Those facts do not align with either this case or the precedent set forth in *Velez*.

The Second Circuit has long held that where a legislative body retaliates against a plaintiff by voicing its opinion, "rather than exercising some sort of legal authority, . . . however outrageous the legislators' statements were, no valid federal retaliation claim exist[s]." *Velez*, 401 F.3d at 99 (discussing *X-Men Security, Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999)). As the court noted in *X-Men*, "'[t]he 'critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not.'" 196 F.3d at 71 (quoting *Healey v. James*, 408 U.S. 169, 192 (1972)). Here, the Board had no legal authority to remove Paladino, and instead voiced its opinion while advocating for an outcome. Consequently, the Board members cannot be liable for a First Amendment violation.

### III. Qualified Immunity

The Board members, in their individual capacities, also claim qualified immunity. "Under the doctrine of qualified immunity, a government official performing discretionary

functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The defense of qualified immunity is usually unavailable to support a grant of a Rule 12(b)(6) motion unless "the facts supporting the defense appeared on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004). "The plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

Here, *Velez* controls the question of liability under the First Amendment. In light of *Velez*, the Court finds that there was no actionable First Amendment violation, that any alleged violation was not clearly established, and that it would not have been objectively reasonable for Board members to believe that they were violating Paladino's rights. The individual Defendants are therefore entitled to qualified immunity.[1]

---

[1] Defendants also argue for the application of collateral estoppel, contending that Paladino's First Amendment claims were addressed in the Commissioner's ruling. That ruling, however, specifically stated that "an appeal to the Commissioner is not the proper forum to adjudicate novel issues of constitutional law . . . , and [] a novel claim of constitutional dimension should be properly presented to a court of competent jurisdiction." The Commissioner also cited this pending litigation. Given those comments, the Court is reluctant to consider the constitutional

**IV.  Conspiracy Claim**

Defendants contend that without an underlying constitutional violation, Paladino cannot bring a plausible claim of conspiracy to deprive him of his rights.  A viable claim of conspiracy under Section 1983 requires allegations showing "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Consequently, "absent an underlying constitutional violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012) (citation omitted); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy.").  Here, because there was no unconstitutional conduct, Paladino has

---

questions presented in this case as having been fully and fairly litigated in the state administrative proceeding, and thus will not address the matter of collateral estoppel.  The Court nonetheless acknowledges the following insight offered by the Commissioner: "[T]he First Amendment retaliation framework is ill-suited to the facts presented in the instant proceeding.  As petitioner notes, recognition of such a defense would immunize board members who have committed a wilful violation of the law from removal if they happened to engage in protected speech prior to the violation."

failed to state a plausible claim of conspiracy under Section 1983.

## V.   Claims Against the Buffalo School District

There are no direct allegations against the City of Buffalo School District.  As Defendants concede, the pleadings could be read to include actions by the District's General Counsel, which included attending meetings where certain actions were taken.  Paladino has not responded to the motion to dismiss the School District, and given that the only claims arguably involving the District are indirect, vague, or conclusory, the motion to dismiss all claims against the School District is granted.

## VI.  Other Causes of Action

Defendants submit that Paladino's fourth, sixth, seventh, eighth, and ninth causes of action merely repeat his other constitutional claims, and must therefore be dismissed as redundant.  As noted previously, those causes of action include claims for: pretextual deprivation of civil rights by filing a removal petition on the basis of Paladino's comments about a public contract (Count 4); retaliatory investigation into private political speech (Count 6); retaliatory investigation into public political speech (Count 7); retaliatory inducement of a prosecution (Count 8); and declaratory judgment that Defendants engaged in unlawful retaliation (Count 9).

The Court agrees that, though pleading in the alternative is

permitted, each of these causes of action is premised upon essentially the same First Amendment allegation. Paladino submits that these other claims involve intent, and that discovery is required. Without a plausible legal claim, however, Paladino's suit cannot move forward.

As discussed above, the primary conduct of consequence by the Board was the filing of a petition for removal. That conduct is not actionable under the First Amendment. Other alleged Board actions, such as the retention of counsel and investigating Paladino's conduct, were a part of the broader conduct that culminated in the removal petition and are thus not actionable. *Cf. In Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23 (1st Cir. 1996) (rejecting claim that elected members of the Puerto Rico Senate violated Governor's First Amendment rights when they held investigative hearings); *Mousaw v. Bd. of Educ. of Colton Pierrrepont Cent. Sch. Dist.*, No. 7:07-CV-1006, 2011 WL 1667909, at *6 (N.D.N.Y. May 3, 2011) (holding that allegation of retaliatory investigation failed because board had no power to remove elected official without concluding administrative process). With respect to Paladino's tenth cause of action, requiring an interpretation of state law, the claim is dismissed without prejudice for lack of federal subject matter jurisdiction. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before

trial, the state claims should be dismissed as well."). The remaining claims are therefore dismissed.

## **Conclusion**

For the reasons set forth above, Defendants' motion to dismiss is granted.

DATED at Burlington, Vermont, this 15th day of September, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge
